UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HEATHER ITANI,

    Plaintiff,

v.                                        CASE NO. 3:22-CV-101-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues that the agency's decision is not supported by substantial evidence because the Administrative Law Judge (ALJ) did not properly weigh certain medical source opinions and did not properly consider her fibromyalgia. After considering Plaintiff's brief (doc. 11), the Commissioner's brief (doc. 15), and the administrative record (doc. 7), I find the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence. Remand is necessary.[1]

    I.    *Background*

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

Plaintiff Heather Itani, born on June 23, 1975, was 43 years old on her alleged disability onset date, April 30, 2019 (Tr. 213). She claims disability due to fibromyalgia, migraines, bulging discs, premature ventricular contractions, stomach pain (nausea), extreme pain in hip and back, dizziness with flare ups, depression, chronic fatigue, and numbness in hands (Tr. 235). Plaintiff graduated from college in April 2019 (Tr. 34). She has past work experience in pharmaceuticals, and as a customer service clerk (Tr. 49-50). At her administrative hearing, she testified that in 2019 her pain and fatigue symptoms became progressively worse, she stopped working, received short-term disability benefits, and (when her short-term disability benefits ended) was terminated from her job (Tr. 51-52). She testified that she held jobs since she was sixteen years old (except for the three months she took off when her son was born), and went from a "strong, independent, hard-working woman" to … having "feelings of worthlessness" … "depending on [her] husband, [her] parents and [her] mother-in-law, [her] step-daughter, and [her] son to do things for [her] that [she] used to do [her]self." (Tr. 67).

Given her alleged disability, Plaintiff filed an application for a period of disability and DIB (Tr. 211-214). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 78-97, 98-118). Plaintiff then requested an administrative hearing (Tr. 145-146). Per Plaintiff's request, the ALJ held a hearing on November 20, 2020, at which Plaintiff appeared and testified (Tr. 43-77). Following the hearing, the ALJ issued a decision on April 15, 2021 (Tr. 10-25). In rendering the administrative decision, the ALJ concluded that Plaintiff met

2

the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since her alleged onset date, April 30, 2019 (Tr. 12-13). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments through the date last insured: fibromyalgia; history of degenerative disc disease with back pain; migraines; and depressive, bipolar and related disorders (Tr. 13). Notwithstanding the noted severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> … she can lift up to 20 pounds occasionally, and lift/carry up to 10 pounds frequently. She can stand/ walk for about 6 hours, and sit for up to 6 hours in an 8-hour workday, with normal breaks. She is limited to no climbing of ladders, ropes, or scaffolds, and occasional climbing of ramps or stairs. She is limited to occasional balancing, stooping, kneeling, crouching, and crawling. She is limited to frequent handling (gross manipulation), fingering (fine manipulation), and feeling, bilaterally. She must avoid concentrated exposure to extreme cold, extreme heat, vibration, poorly ventilated areas, environmental irritants (i.e., fumes, odors, dusts, and gases) and hazards (i.e., the use of moving machinery and unprotected heights). She is limited to a moderate noise intensity level as that term is defined by the Dictionary of Occupational Titles (DOT). Work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine workplace changes. She is limited to no interaction with the public and only occasional interaction with coworkers and supervisors.

(Tr. 15).  In formulating Plaintiff's RFC, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-3p (Tr. 15).

The ALJ opined that Plaintiff is unable to perform her past relevant work, Director Pharmacy Services (DOT 074.167-010, SVP 8, Light, Performed Medium) and Customer Service Clerk (DOT 299.367-010, VP 4, Light) (Tr. 23).  Given Plaintiff's background, and the RFC, the vocational expert (VE) testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as the jobs of Cleaner, Housekeeping (DOT 323.687-014, SVP 2, Light), Bagger (DOT 920.687-018, SVP 1, Light), Final Assembler (DOT 713.687-014, SVP 2, Sedentary), Tube Operator (DOT 239.687-014, SVP 2, Sedentary), Leaf Tier (DOT 529.687-138) (Tr. 24).[2]  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24).  Plaintiff then timely appealed, and the Appeals Council denied her request for review (Tr. 1-6).  Thereafter, Plaintiff filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[2] According to the DOT, a Leaf Tier "[t]ies tobacco leaves in hands (bundles) to facilitate processing."  529.687-138 Leaf Tier, DICOT 529.687-138.  The VE noted that there are 60,000 leaf tier jobs nationally.  Work exists in the national economy if it exists in significant numbers either in the region where Plaintiff lives or in several regions of the country, regardless of whether work exists in Plaintiff's immediate geographical area, specific job vacancies exist, or Plaintiff would be hired in she applied.  *See Atha v. Comm'r of Soc. Sec.,* 616 F. App'x 931, 933-35 (11th Cir. 2015).

## II. *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and

work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are

supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

Plaintiff argues that the ALJ erred by failing to properly weigh certain medical source opinions and failing to properly consider her fibromyalgia. These arguments are intertwined, and I will address them together.

Fibromyalgia "is 'characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987-88 (11th Cir. 2015) (quoting SSR 12-2p, 2012 WL 3104869, at *1). SSR 12-2p provides guidance on how the SSA develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and how the SSA evaluates fibromyalgia in a disability claim. SSR 12-2p, 2012 WL 3104869, at *1. The ruling directs ALJs to consider fibromyalgia in the five-step sequential evaluation process and instructs them on how to develop evidence and assess the impairment in determining if it is disabling. *Id.* Per SSR 12-2p, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.* at *6. In fact, fibromyalgia's characteristic waxing and waning symptoms may prevent a person from performing a full range of work. *Id.* The ruling recognizes that it is common in cases involving fibromyalgia to find evidence of

"normal" examinations and test results that have ruled out other disorders that could account for the person's symptoms and signs. *Id*. at *3.

When determining whether a claimant can do any past relevant work or other work that exists in significant numbers in the national economy, SSR 12-2p instructs an ALJ to consider widespread pain or other symptoms associated with fibromyalgia (such as fatigue) and to be alert to the possibility that there may be exertional or nonexertional limitations, such as postural or environmental limitations, that may impact the analysis. *Id.* The ruling advises that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms [the SSA will] consider all of the evidence in the case record, including the claimant's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by third parties about the claimant's symptoms. *Id.* at *5.

Although the same pain standard applies for fibromyalgia, the Eleventh Circuit has "loosened the need for objective medical evidence … 'because the hallmark of fibromyalgia is a lack of objective evidence such that a claimant's subjective complaints may be the only means of determining the severity of her condition and the functional limitations she experiences.'" *Vasquez v. Comm'r of Soc. Sec.*, No. 2:20-cv-540-NPM (M.D. Fla. March 29, 2022), 2022 WL 909754, at *5 (quoting *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x. 855, 863 (11th Cir. 2017) (citing *Moore v. Barnhart*,

405 F.3d 1208, 1211 (11th Cir. 2005))). In fact, under this Circuit's well-established case law, undue emphasis on the lack of objective findings to substantiate a claimant's fibromyalgia-related reports constitutes error. *See generally Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) ("The lack of objective clinical findings is, at least in the case of fibromyalgia, therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations); *Witherell v. Berryhill*, No. 8:17-cv-2806-T-CPT, 2019 WL 1397927, at *4 (M.D. Fla. Mar. 28, 2019) (ALJ's undue emphasis on lack of objective findings in evaluating fibromyalgia complaints required remand); *Catalan v. Berryhill*, No. 8:17-cv-1425-T-30MAP, 2018 WL 4055340 (M.D. Fla. Aug. 9, 2018) (remanding where ALJ failed to mention or follow SSR 12-2p's criteria concerning fibromyalgia); *Janeda v. Comm'r of Soc. Sec.*, No. 2:16-cv-803-FtM-MRM, 2018 WL 1282313 (M.D. Fla. Mar. 13, 2018) (remanding where ALJ failed to consider claimant's fibromyalgia pursuant to SSR 12-2p and may have erred in evaluating her fibromyalgia); *Morgan v. Comm'r of Soc. Sec.*, No. 8:14-cv-305-T-DNF, 2015 WL 1311062 (M.D. Fla. Mar. 24, 2015) (remanding where ALJ failed to mention or follow SSR 12-2p's criteria concerning fibromyalgia).

In this case, the ALJ did not dispute Plaintiff's fibromyalgia diagnosis and concluded it was a severe impairment at step two (Tr. 13). However, in formulating the RFC, the ALJ found that, while the Plaintiff's medically determinable impairments, including fibromyalgia, could reasonably be expected to produce the alleged symptoms, her statements regarding the intensity, persistence, and limiting

effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 17). She explained, "As for claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are not entirely consistent because the physical and mental status exam findings, imaging studies and objective medical testing are not fully supportive as discussed herein" (Tr. 17). The ALJ discussed that the medical evidence shows a history of treatment for fibromyalgia, including a two-day evaluation for fibromyalgia in June 2019 at Mayo Clinic where Plaintiff was advised "to pace her activities and not overdo things" (Tr. 17). The ALJ also discussed that Plaintiff reported a decrease in pain to a level 5-6 (from 7) after starting Lyrica; that treating rheumatologist Dr. Barakat's exams revealed diffuse soft tender points in the cervical, lumbar, and paraspinal areas; that Plaintiff reported to her primary care provider Dr. Traveria in July 2019 that Lyrica worked but left her "loopy," and that she still had pain, numbness, and swelling in her hands, fatigue, and dizziness; and that Dr. Holmes's consultative exam in October 2019 revealed 12 tender points (Tr. 17-18).

    Despite acknowledging the above, the ALJ quickly dismissed Plaintiff's reports of widespread pain and fatigue, her side effects from medications, and her limited daily activities (Tr. 16, 17). In doing so, the ALJ repeatedly stated that "[t]he objective findings and course of treatment, while showing a waxing and waning of symptoms, are not consistent with a significant and sustained exacerbation that has been disabling since the alleged onset date" (Tr. 20, 21, 22, 22-23). Such conclusory reasoning and

10

repeated reference to objective medical evidence demonstrates that the ALJ relied primarily—if not exclusively—on the objective medical evidence.

Additionally, and despite SSR 12-2p's framework for evaluating fibromyalgia, the ALJ unduly relied on the lack of supporting objective evidence in evaluating medical source opinions from Plaintiff's longtime treating rheumatologist, Mirna Barakat, M.D., and her primary care physician, Alex Traveria, M.D. These treating sources both indicated Plaintiff was more limited than determined by the ALJ.[3] In June 2019, Dr. Barakat assessed "diffuse soft tissue tender points in the cervical and paraspinal areas, diagnosed fibromyalgia and sicca syndrome," and opined that Plaintiff was unable to work due to "unpredictable days of flare ups with fatigue, pain, concentration problems, headaches, and GI symptoms" (Tr. 389-90). Although the ALJ discussed this office visit (Tr. 17), she did not address Dr. Barakat's opinion.

Likewise, Dr. Traveria, who began treating Plaintiff in 2010, described Plaintiff's fibromyalgia as "a chronic condition causing multiple points of soft tissue pain throughout the body on a chronic basis" (Tr. 785). Dr. Traveria indicated clinical findings include "multiple soft tissue trigger points/ pain, chronic fatigue, easily fatigued with exertion, higher recovery times secondary to fibromyalgia" (Tr. 785). He also indicated that Plaintiff experiences side effects from Lyrica (drowsiness,

---

[3] Of course, ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support her findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c).

dizziness, and difficulty concentrating) and from Trazadone (dizziness, drowsiness, and nausea) (Tr. 785).  Dr. Traveria opined that Plaintiff's fibromyalgia is a lifelong condition with symptoms including muscle/joint pain, chronic pain in back and hips, chronic fatigue, difficulty concentrating and memory issues, feeling down/ depressed, palpitations (Tr. 785).  In August 2019, Dr. Traveria opined that Plaintiff would be off task 25% or more of the time during a typical workday due to symptoms and side effects; that she is incapable of even a low stress job; that she can walk 1-2 blocks without rest or severe pain; that she can sit for 30 minutes at one time; that she can stand for 15 minutes at one time; that she can work for 0 hours a day; and that she can sit and stand/walk for less than two hours (Tr. 786-787).  Citing to "conservative medication regimen," that she had not yet started on Lyrica when Dr. Traveria rendered his opinions, and that lifestyle changes were recommended such as walking and yoga to help with symptoms, the ALJ found Dr. Traveria's opinion "unpersuasive" (Tr. 21).  The ALJ also stated that "[s]ubsequent treatment records, objective findings, and the course of treatment show a continued medication regimen for generally consistent impairments, with Lortab and Lyrica more recently reported for fibromyalgia in October 2020" (Tr. 21).

      Here, the longitudinal medical evidence reveals that Plaintiff often displayed multiple tender points, satisfying at least the requisite number for a fibromyalgia diagnosis, and often reported fatigue, joint pain, and concentration problems.[4] Per the

---

[4] Notably, Dr. Lazo assessed fibromyalgia that affects cervical, thoracic, and lumbosacral areas and causes associated arthralgia in hands with mild weakness in

12

applicable regulation, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1).[5] As discussed above, fibromyalgia

---

upper extremities; migraine headaches under sub-adequate control and depression and anxiety disorder under sub-adequate control (Tr. 554). Plaintiff reported to Dr. Lazo that although Lyrica helps some, her pain never leaves; that Lyrica makes her very drowsy preventing her from driving; that she has four bed days out of the week; that she does not do house chores; and that she can walk no more than five minutes slowly, can stand for a few minutes and can hold less than five minutes (Tr. 552). Dr. Choisser opined in October 2020 that Plaintiff has a history of widespread pain and had 12 out of 18 trigger points (Tr. 820). Dr. Choisser's Physical Residual Functional Capacity Questionnaire describes Plaintiff's prognosis as poor; that clinical findings include a reduced range of motion in her neck and lower back, and tender trigger points; that Lortab causes drowsiness and Lyrica causes sedation; that she would be off task 25% of the time or more; and that she is incapable of even low stress jobs (Tr. 814-815). Dr. Choisser also opined that Plaintiff could walk for three city blocks without resting, can sit for ten minutes at a time, can stand for fifteen minutes at a time, and can sit for two hours in an eight-hour day and stand/walk for two hours in an eight-hour day (Tr. 815-816). The ALJ opined that Dr. Choisser's opinion was "partially persuasive" as it was only "partially consistent with the hearing level objective and medical evidence, as well as the course of treatment (Tr. 20).

[5] Since Plaintiff submitted her application for benefits on April 30, 2019, the new regulations governing medical opinions are applicable. Namely, under 20 C.F.R. § 404.1520c, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment

13

typically lacks objective support. Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). While the medical source opinions were not identical, sources who provided long term treatment to Plaintiff opined that she was more limited than the limitations the ALJ included in the RFC. Against this backdrop, I find that the ALJ failed to adequately analyze the supportability and consistency of these medical source opinions.

As mentioned previously, the ALJ stated several times in her decision that "[t]he objective findings and medical records, while showing a waxing and waning of symptoms, are not consistent with a significant and sustained exacerbation that has been disabling since the alleged onset date." *See* Tr. 20, 21, 22. As Plaintiff points out, this awkward language seems to demonstrate a misunderstanding of "waxing and waning" symptoms (fibromyalgia's hallmark sign) and how fibromyalgia may affect a claimant's ability to work. *See* SSR 12-2p at *6 (recognizing that fibromyalgia is characterized by waxing and waning symptoms that may prevent a person from performing a full range of work). It is imperative for an ALJ to consider the longitudinal record. *See* SSR 12-2p. The focus should be on how severe and frequent the flares are and whether a person would be able to sustain full time employment given the absenteeism and off-task behavior. And, if the objective medical evidence

---

relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v), (4), & (5).

does not support a claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then an ALJ must consider a claimant's daily activities, medications, or other treatments the person uses or used to alleviate symptoms, the nature and frequency of a claimant's attempt to obtain medical treatment for the symptoms, and statements by other people about the claimant's symptoms. *Id*. at 5.

Here, the ALJ did not discuss the unique nature of fibromyalgia, its lack of objective evidence, its other symptoms such as fatigue and widespread pain, or recognize that a claimant's subjective complaints may be the only means of determining its severity and the functional limitations she experiences. *See* SSR 12-2p; *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (citing *Moore*, 405 F.3d at 1211). Rather, despite the longitudinal record and medical source opinions that Plaintiff's fibromyalgia symptoms result in exertional and non-exertional limitations, the ALJ unduly emphasized the lack of objective findings in discounting the persuasiveness of the medical source opinions and in determining the limitations to include in her RFC. Upon review, I find that the ALJ's disability determination regarding Plaintiff's fibromyalgia-related symptoms is not based on substantial evidence and requires remand. *See, e.g., Fons v. Saul,* No. 19-22250-UU, 2020 WL 5040178, at *2 (S.D. Fla. August 26, 2020) (finding ALJ improperly discounted treating physician due to lack of objective evidence supporting fibromyalgia diagnosis); *Smith v. Astrue,* No. 4:10-cv-472-MP/WCS, 2011 WL 5026218, at *20 (N.D. Fla. Sept. 16, 2011) ("It would be error to discount [the doctor's] opinion in

15

reliance on a lack of objective medical evidence to support [p]laintiff's description of the degree of pain that she experiences from fibromyalgia.").

Plaintiff also asserts that the ALJ failed to properly consider the medical source opinions regarding her migraine headaches. In light of this remand, the Court need not address Plaintiff's remaining contention of error. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). On remand, the ALJ shall re-assess the entire record, including Plaintiff's migraine headaches.

IV.  *Conclusion*

It is ORDERED:

(1) The ALJ's decision is REVERSED and REMANDED to the Commissioner for further administrative proceedings consistent with this Order; and

(2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on this 7th day of March, 2023.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE